# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| ULTRAVISION TECHNOLOGIES, LLC | § | |
| | § | |
| v. | § | Case No. 2:16-CV-374-JRG-RSP |
| | § | |
| LAMAR ADVERTISING COMPANY, ET AL. | § | |

## MEMORANDUM ORDER

Before the Court is Defendant Irvin International Inc. ("Irvin")'s Motion to Sever and Stay (Dkt. No. 116), to which Plaintiff Ultravision Technologies, LLC filed a Response in Opposition (Dkt. No. 122), Irvin filed a Reply (Dkt. No. 123) and Ultravision filed a Sur-Reply (Dkt. No. 134).

**I.  BACKGROUND**

Ultravision filed its First Amended Complaint ("FAC") (Dkt. No. 52) on June 28, 2016 and its Second Amended Complaint ("SAC") (Dkt. No. 121) on September 2, 2016. Both of Ultravision's FAC and SAC allege that Irvin, Defendants Lamar Advertising Company, Lamar Media Corp., The Lamar Company, L.L.C., Lamar Texas Limited Partnership ("Lamar") and Lighting Technologies, Inc. ("LTI") infringe U.S. Patent Nos. 8,870,410, 8,870,413, 9,212,803 9,234,642 and 9,349,307 ("the Asserted Patents"). (Dkt. No. 116 at 2). The only difference between the SAC and the FAC is that in the SAC, the following additional counts are pled by Ultravision against Irvin: Count IX: False Marking Under 35 U.S.C. §292 by Irvin (Dkt. No. 121 at 75-77, paras. 207-212), Count X: False Advertising Under the Lanham Act by Irvin (Dkt. No. 121 at 77-80, paras. 213-222) and Count XI: Unfair Competition Under Texas Law by Irvin (Dkt. No. 121 at 80-82, paras. 223-230).

LTI is also the sole manufacturer of the Accused Products, as defined in the FAC and SAC, and Irvin is a distributor of LTI's Accused Products, and is the only supplier that sells LTI's Accused Products under the name "MarQuee LED." (Dkt. No. 116 at 3). Irvin also resells the products designed and developed by LTI and was not involved in the design or development of LTI's Accused Products. *Id.*

## II. RELEVANT LAW

Federal Rule of Civil Procedure 21 "allows the court to sever any claim against a party." *Shifferaw v. Emson USA,* No. 2:09-cv-54-TJW-CE, 2010 WL 1064380, at *1 (E.D. Tex. Mar. 18, 2010), *citing* FED. R. CIV. P. 21. "The district court has broad discretion when deciding whether to sever." *Id., citing Anderson v. Red River Waterway Comm'n,* 231 F.33d 211, 214 (5th Cir. 2000). Courts have found that "severance may be permitted if three factors are met: (1) whether the remaining claims are peripheral to the severed claims; (2) whether adjudication of the severed claims would potentially dispose of the remaining claims; and (3) whether the § 1404(a) factors warrant transfer of the severed claims." *Shifferaw,* 2010 WL 1064380, at *1.

"The district court has the inherent power to control its own docket, including the power to stay proceedings." *Soverain Software LLC v. Amazon.com, Inc.,* 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005), *citing Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936); *Murata Machinery USA v. Daifuku Co., Ltd.,* 830 F.3d 1357, 1361 (Fed. Cir. 2016); *Procter & Gamble Co. v. Kraft Foods Glob., Inc.,* 549 F.3d 842, 848-49 (Fed. Cir. 2008). In deciding whether to stay litigation pending reexamination, courts typically consider: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set. *Soverain Software,* 356 F. Supp. 2d at 662.

## III. ANALYSIS

### A. Severance of Ultravision's Claims Against Irvin

The Court now analyzes: (1) whether Ultravision's claims against Irvin are peripheral to its claims against LTI; (2) whether adjudication of the severed claims would potentially dispose of the remaining claims; and (3) if the § 1404(a) factors warrant transfer of the severed claims.

#### 1. Whether Ultravision's Claims Against Irvin are Peripheral

Irvin asserts that Ultravision's claims against it are peripheral to Ultravision's claims against LTI because Irvin is a distributor who (i) simply resells LTI's Accused Products and (ii) is fully indemnified by LTI in connection with this litigation. (Dkt. No. 116 at 5-6), *citing In re Nintendo of America, Inc.* 756 F.3d 1363, 1365 (Fed. Cir. 2014).

In response, Ultravision contends that unlike the *In re Nintendo* case that Irvin cites, the "customer-suit exception" does not apply to the patent infringement claims asserted against Irvin, and that courts have refused to apply such an exception where proof of infringement by the manufacturer (here, LTI) will not necessarily establish infringement by the retailer, such as in this case. (Dkt. No. 122 at 7-8), *citing Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.,* No. 2:15-cv-1202-WCB, 2016 WL 1659924, at *2-5 (E.D. Tex. Apr. 26, 2016).

##### a. The Three Additional Claims Against Irvin

Ultravision further notes that since the filing of Irvin's Motion to Sever and Stay (Dkt. No. 116), the SAC (Dkt. No. 121) was filed, which added three additional claims asserted just against Irvin: false marking (Count IX), false advertising (Count X) and unfair competition (Count XI). (Dkt. No. 122 at 10). Ultravision then argues that there can be no dispute that these three claims against Irvin are separate, distinct and not peripheral to the patent infringement claims against LTI. *Id.* at 10-11.

Irvin contends that those three new claims added by Ultravision have no merit because Ultravision's SAC was filed "late on a Friday night just prior to the due date for receiving answers to its requests for admission related to the subject matter underlying the Additional Claims in the [SAC]" and "[s]uch a maneuver appears to be calculated to attempt to avoid knowledge of answers to the requests for admission which would render the Additional Claims baseless." (Dkt. No. 123 at 1-3).

Ultravision counters by stating that the three additional claims are warranted and track the facts presented in Ultravision's original complaint (Dkt. No. 1 at 26, para. 60) as well as its efforts to obtain discovery on the same issues, noting that although Ultravision served its infringement contentions on Defendants – including Irvin – in mid-June, Irvin did not mention the possibility of a motion for severance of Ultravision's patent infringement claims against Irvin and a stay of that case until after Ultravision's Requests for Admissions to Irvin addressed facts that highlighted the existence of the additional claims against Irvin. (Dkt. No. 134, at 1, n.1). Ultravision also notes that strategically, Irvin filed its Motion to Sever and Stay (Dkt. No. 116) before its responses to Ultravision's Requests for Admission were due. (Dkt. No. 134 at 1).

### b. The Indirect Infringement Claims Against Irvin

Ultravision also argues that while some of the patent claims against Irvin and LTI overlap, Ultravision's indirect infringement allegations of the method claims vary with the specific party, as those claims are infringed when Irvin's customers install and activate the lights Irvin sells, and for which it provides instructions. (Dkt. No. 122 at 9-10). Thus, Ultravision asserts induced infringement by Irvin for the underlying direct infringement by its customers and accordingly, because some of Ultravision's infringement allegations against Irvin are not

encompassed within the infringement allegations against LTI, Ultravision's patent infringement allegations against Irvin are not peripheral to the allegations against LTI. *Id.* at 10.

In response, Irvin asserts that in its pleadings and its infringement contentions, Ultravision makes no attempt to differentiate the direct and indirect infringement allegations or the claims being asserted against each Defendant. (Dkt. No. 123 at 4). Irvin further argues that Ultravision's allegations of indirect infringement do not differ with regard to Irvin as compared to LTI because if the LED Accused Products were held to directly infringe the Asserted Patents based on the actions of Irvin's customers in connection with billboard illumination, then Irvin and LTI both could indirectly infringe these claims. *Id.* Irvin asserts that LTI manufactures and sells the LED Accused Products to Irvin to be resold to Irvin's customers with the purpose of inducing such customers to use the LED Accused Products as intended, i.e. for billboard illumination and therefore, the same facts supporting a claim for inducement against Irvin could support a claim against LTI. *Id.*

The Court finds that on balance, the claims against Irvin – including (i) the three additional claims added in the SAC asserted against Irvin of false marking (Count IX), false advertising (Count X) and unfair competition (Count XI) – as well as (ii) the indirect infringement claims against Irvin – are peripheral to the patent infringement claims asserted by Ultravision against LTI, at least to the extent that they do not overlap entirely with the patent infringement claims asserted over LTI. However, because the additional non-patent claims or Irvin's indirect infringement claims will not be resolved entirely via the adjudication of the infringement claims against LTI (as analyzed in the next factor), the finding that these claims are peripheral is not sufficient on its own to sever Irvin's claims as a matter of judicial efficiency. Therefore, the more pressing analysis will be taken up next.

## 2. Whether Adjudication of the LTI Claims Will Dispose of Irvin's Claims

Irvin next argues – however, before the SAC was filed alleging the aforementioned three additional claims against it – that adjudication of the claims against LTI would dispose of the claims against Irvin in their entirety. (Dkt. No. 116 at 6-9). However, after the SAC was filed, Irvin argues that the three new claims are unrelated to patent infringement and therefore do not preclude severance of the patent infringement allegations against Irvin because the Court may sever the patent infringement allegations against Irvin while allowing the additional three claims to proceed until they are readily dismissed as without merit via either motion practice or at trial. (Dkt. No. 123 at 3). Irvin states that in determining whether to sever and stay the patent infringement allegations against a distributor or customer, "the key is whether 'resolution of the major issues before [the] court, including patent infringement [and] patent validity…will resolve these issues as to [the] customers." *Vantage Point Tech., Inc. v. Amazon.com, Inc.,* No. 2:13-cv-909-JRG, 2015 WL 123593, at *2 (E.D. Tex. Jan. 6, 2015). This is because "[a]lthough there may be additional issues involving the [customer] defendants…their prosecution will be advanced if…[The Plaintiff] is successful on the major premises being litigated, and may well be mooted if he is unsuccessful," *Katz v. Lear Siegler, Inc.,* 909 F.2d 1459, 1464 (Fed. Cir. 1990).

In response, Ultravision asserts that while Ultravision's three additional claims against Irvin focus on the MarQuee LED Products, those claims will not be resolved through the adjudication of Ultravision's patent infringement claims against LTI, which focus on Ultravision's patents, not those of Irvin, LTI, or any related parties, and will not involve an examination of any of the elements that underlie Ultravision's false marking, false advertising or unfair competition claims against Irvin. (Dkt. No. 122 at 11-12). Ultravision also argues that a finding of infringement by LTI of certain patent claims may not establish whether Irvin infringes

all the patent claims asserted against it, and similarly, assuming that the jury finds no infringement by LTI of certain patent claims, such a finding may not preclude a finding of infringement against Irvin. *Id.* at 10. Thus, Ultravision reasons that the only way adjudication of the patent infringement claims against LTI would resolve the patent infringement claims against Irvin is if every asserted claim of the Asserted Patents was found invalid; however, this is a possibility in every patent infringement case – regardless of how unrelated and independent the claims are against the various defendants – and is not the standard to be applied when determining whether a severance is warranted. *Id.*

Irvin counters that Ultravision has never before distinguished the patent infringement claims against the Defendants and that these claims in actuality overlap in their entirety. (Dkt. No. 123 at 5). Therefore, adjudication of Ultravision's claims against LTI would resolve all patent infringement claims against Irvin. *Id.* Yet, Ultravision points out that the direct and indirect infringement allegations and evidence against LTI and Irvin will not automatically be the same, as evidenced by Ultravision's pleading in the alternative, "directly and/or indirectly infringed" and also "individually and collectively." (Dkt. No. 134 at 3). As Ultravision mentioned previously, some of the asserted claims are method claims that are infringed when the lights are installed and used by Irvin's customers, and other claims are directed towards a "billboard" of which LTI's lights satisfy one or more elements; thus, Irvin's concession that it could be found to indirectly infringe based on sales of the Accused Products confirms that infringement by the manufacturer (LTI) will not necessarily establish infringement by a distributor (Irvin). *Id.* "A seller does not induce infringement of a method claim by merely selling an apparatus capable of performing the method." *See ePlus, Inc. v. Lawson Software, Inc.,* 789 F.3d 1349, 1360 (Fed. Cir. 2015).

Therefore, Ultravision argues that because inducement requires proof of a defendant taking such steps as encouraging, recommending or promoting an infringing use, the facts proving whether or not LTI induces infringement will not necessarily prove whether or not Irvin induces infringement. (Dkt. No. 134 at 3). As a result, because the customers of Irvin to whom Irvin teaches an infringing use are not necessarily the customers of LTI, adjudication of Ultravision's claims against LTI would not resolve its claims against Irvin. *Id.* at 3-4.

On balance, the Court finds that the adjudication of Ultravision's claims against LTI would not resolve its claims against Irvin, including the three additional claims pled just against Irvin and the indirect infringement claims. The false marking, false advertising and unfair competition claims pled by Ultravision against Irvin require additional facts, evidence, analysis and argument(s) not considered for Ultravision's claims against LTI, not to mention other patents belonging to LTI and Irvin that are outside of Ultravision's Asserted Patents. Thus, the adjudication of Ultravision's patent infringement claims against LTI, which also focus on just Ultravision's Asserted Patents, will not necessarily resolve the false marking, false advertising and unfair competition claims against Irvin. The same applies to Ultravision's indirect infringement claims against Irvin (including induced infringement), which will involve facts, evidence and analysis beyond those considered for Ultravision's infringement claims against LTI: in particular, facts pertaining to Irvin's customers and whether Irvin taught, instructed, encouraged, recommended or promoted those customers to infringe the Asserted Patents. Thus, in the interest of judicial economy, the claims against Irvin should not be severed into a separate case because the adjudication of Ultravision's patent infringement claims against LTI will not necessarily resolve Ultravision's varied claims against Irvin – which include false marking, false advertising, unfair competition, indirect infringement and induced infringement.

### 3. Whether The § 1404(a) Factors Warrant Transfer

Because no transfer is requested here, this third factor is moot. (Dkt. No. 116 at 4, n.2).

### B. Stay

The Court now analyzes: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to Ultravision, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set.

#### 1. Whether Ultravision will be Unduly Prejudiced

Irvin argues that because the resolution of the claims against LTI will fully resolve the claims against Irvin, severance and stay of the claims against Irvin will not impose a significant burden on Ultravision, witnesses or the federal court system, and Ultravision will not be prejudiced or incur a tactical disadvantage. (Dkt. No. 116 at 10). In response, Ultravision contends that requiring it to sit on its claims against Irvin until after resolution of its claims against LTI and Lamar means that Ultravision would only begin its case against Irvin sometime after mid-October 2017. (Dkt. No. 122 at 12). Moreover, as discussed above, several claims asserted against Irvin (e.g. false marking, false advertising, unfair competition) are separate and distinct from those asserted against LTI and Lamar, so Ultravision would be continually harmed by Irvin on those fronts without having an opportunity to work towards building its case against Irvin through discovery and motion practice. *Id.* Such a delay would also mean that the evidence supporting Ultravision's claims against Irvin would potentially degrade, at least in terms of relevant witnesses' memories. *Id.* at 12-13.

On balance, the Court finds that there would be some prejudice or the appearance of tactical disadvantage to Ultravision if its case against Irvin were to be stayed.

Partly due to the reasons provided above of there being separate, non-overlapping and distinct claims being pursued by Ultravision against Lamar, any potential prejudice or tactical disadvantage to Ultravision in being able to effectively pursue those claims grows larger the longer the case is stalled. Thus, a stay should not be entered in this case for at least this reason.

### 2. Whether A Stay Will Simplify The Issues in The Case

Irvin argues that because (1) Irvin is willing to stipulate to be bound by the rulings of the court in the case against LTI regarding liability and (2) Ultravision cannot receive a double recovery against the same accused product and thus no royalty would be available against LTI, a stay would simplify the issues in question and trial of this case and would "facilitate just, convenient, efficient, and less expensive determination" of this action. (Dkt. No. 116 at 11), *citing Nintendo,* 756 F. 3d at 1365. In response, Ultravision contends that because it asserts claims against Irvin that are distinct and not encompassed within the infringement claims against LTI, the only way a stay would resolve all its claims against Irvin is if there was a finding of invalidity of every asserted claim of the Asserted Patents – which is a potential result in all patent cases, and that possibility does not mandate granting a stay. (Dkt. No. 122 at 14). Moreover, the additional claims asserted against only Irvin (false marking, false advertising, unfair competition) would not be resolved by adjudication of Ultravision's claims against LTI, and therefore the issues in the case would not be simplified, weighing against a stay in this case.

On balance, the Court finds that a stay of Ultravision's claims against Irvin will not simplify the issues in this case. As discussed above, because there are several non-overlapping claims distinctly asserted against Irvin by Ultravision, a stay would not simplify or streamline the present action; rather, they would complicate the suit and make litigation less convenient and efficient, not to mention more expensive, due to postponement of lingering, unresolved matters.

Consequently, a stay should not be entered here if the Court seeks to preserve judicial efficiency and the conservation of its resources.

### 3. Stage of The Case

Irvin argues that its Motion to Sever and Stay (Dkt. No. 116) is being filed early in the litigation, because trial is not until October 2, 2017. (Dkt. No. 92; Dkt. No. 116 at 11). In response, Ultravision notes that although discovery is not complete, it is underway, with various discovery responses and correspondence having already been exchanged amongst the parties. (Dkt. No. 122 at 15). However, as of the date of this Order, the deadline to substantially complete document production is upon us. Overall, the Court finds that the current stage of the case weighs against entering a stay.

## IV. CONCLUSION

For the foregoing reasons, Irvin's Motion to Sever and Stay (Dkt. No. 116) is **DENIED.**

**IT IS SO ORDERED.**

**SIGNED this 1st day of March, 2017.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE